May it please the Court. I think the most analogous case to plaintiff situation is the case of Smith-Arndt v. Towery, 7-9F3-951-954, where the Court states that here, defendants used far greater force than the plaintiff, and the plaintiff did not use any force at all. Counsel, I just don't really understand how you get around your, heck, the Humphrey problem. Let me tell you my problem and you tell me the solution. My problem is that when I look at the facts, it looks like, well, maybe he was shooting at the police and they were shooting back at him, just like they say, and maybe, as your brief suggests, they were lying and they shot him, and once they had him down, they realized he didn't have a gun, all he had was a cell phone, and maybe that's true. But I look at the judgment in his criminal case, and the only way you can get to that judgment is if he personally was using a gun to assault the policeman. That means it's established, and under Heck v. Humphrey, I have to take it as a given that he was shooting at the police, which means it was fine for them to shoot at him. How do I get around that? Well, I would say the following, that Cal Penal Code 240 defines assault, and assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another. And 245d-2 had to do with assaults, not with an actual battery. And so what you have here is a person Okay, I'm looking at the words of 245. Are you suggesting, then, the assault might have been something other than shooting at the policeman? An assault would be threatening an officer with a weapon. But 245 has to be with a weapon, right? Yes, it does, but nonetheless, we're talking here by an assault. An assault defined by 240 as being Is this a D-2? D-2, yes. And that would, it would suffice that they pointed it, not that they actually fired. There's no evidence anywhere Can a policeman shoot a guy who's pointing a semi-automatic? I beg your pardon? Can a policeman shoot a man who's pointing a semi-automatic firearm at him? That's what D-2 says. The issue is can he shoot him, can they fire 23 shots? Here's the question. The question is You mean the first shot is okay, maybe the second, not the 22nd and third? Maybe not, maybe not. But to start off, to say the following, that up to the point that he pointed a weapon at these two officers on separate occasions, up to that point, they're engaged in the lawful performance of their duties. Which means, but then comes the issue that they claim, and it was found by the criminal court jury, that he had pointed a weapon at each of them. Therefore, at that point, they conceivably could fire one shot or one or two shots. The question is can they fire 23 shots? Well, but if the jury didn't feel that the officers were acting lawfully, the jury would be instructed, they wouldn't, the jury couldn't find the defendant guilty of 245. The Was that instruction in fact given? I couldn't find it in the excerpts. I beg your pardon? The jury instruction that requires the, that the jury be instructed that the officers were acting lawfully within their duty, was that in fact given to the jury here? I don't know, because I never saw the transcripts of the criminal case, and those were not part of the evidence that were put in by the defendants who bore the burden, in this case, of showing that. So I don't know. All that I know is the fact that the jury ultimately convicted the plaintiff of felon with a firearm and of two counts of assault with a, of 245 D2, assault with a semi-automatic firearm, and on a person who they, he knows or reasonably should know is a peace officer engaged in the performance of his or her duties. The question then, my argument is that once he committed that crime, which he did at the point that he first pointed at these two officers, then at that point the issue becomes whether or not they used unreasonable force. Well, wasn't he still running and aiming and maybe shooting after they'd shot him a couple of times? Well, that's really not in the record, because it's, the only record of that is on appeal, and that's a summary of the evidence. It's not the evidence. The evidence in this case is that he just kept, that he ran once they started shooting at him, and it seems to me that Running after you've been shot suggests that you haven't been taken down. I'm sorry, I have a little hearing difficulty. Well, running, if a person runs after he's been shot or shot at, it implies that the shooting has been unsuccessful in stopping him and putting him on the ground. Do you have to shoot someone so severely that they can't run, or if you get shot You have to shoot, if somebody is shooting at you, you have to shoot at them so severely that he can't do it again. I think that's, well, then you get, so it's fine to shoot someone 23 times, but I don't see how your reliance on Smith helps you. There, there was clearly a distinction between the police acts of investigation and then the arrest. This case seems to me more like Cunningham, where it's all part of the same temporal act. It was all one incident that was ongoing until, as Judge Kleinfeld says, he was taken down. I don't know how, in the moment of the police trying to pursue this person and stop him from killing police, at what moment do you say three bullets aren't enough or four bullets aren't enough, when they've obviously not stopped him and stopped him from threatening danger to the police? Well, he says it's a question of fact in this case whether or not he just ran. And the other issue is whether or not if you're shot and the police continue to fire and you can run, you're going to try and get out of the line of fire. So I don't, I would like to reserve two minutes of my time. Okay. Thank you. Thank you, counsel. Thank you. You're not really going to stick with your untimeliness argument on the notice of appeal, are you? I'm not going to waive it, but I'm not going to spend a bunch of time arguing it, only because in reviewing the docket and preparing for today, it seems like there may be some ambiguity with respect to when. I don't even see the ambiguity. We've got a case, Williams v. Borg, says when the judgment is entered, the word entered has a meaning in the rules that means in the docket book. And, gee, it's just common. Judge signs a judgment Tuesday night. His secretary takes it down to the clerk Wednesday morning. She should not only file it with docket at Wednesday, but maybe something comes up, she gets sick or something, doesn't docket it until Thursday. Point well taken. For purposes of today, I think my time is much better spent addressing the substantive merits of the case. So is ours. So I'm not going to address it. I didn't mean to take away your introduction. Oh, no. Introduce yourself. Before going into any of the substantive arguments, I think the Court actually touched on some very important points, and I want to briefly respond to those before I go into my other arguments as to why the district court's order should be affirmed. First, with all due respect to appellant's counsel, I think reliance on the Smith v. Taylor case is somewhat misplaced, and that's because the facts in that case are very different from the facts that we have in the record in this case. There it involved the assault weapon itself was a truck, and the excessive force aspect of the claim didn't come in until after the individual had already exited the truck and was no longer even in possession of the weapon. Well, and clearly someone could resist arrest, and then they could be handcuffed, and while they're handcuffed, the police could beat them up, and the fact that they pled guilty to 148 wouldn't be a heck bar. It would not. And I definitely, defendants are not arguing that there are no circumstances where excessive force could never result following an arrest. What did the jury find in this case that creates the heck bar? Several things. The underlying case that creates the heck bar in this case. Several things. First, the fact that he was in possession of a firearm. Second, that he pointed that firearm repeatedly at the officers as in his efforts to evade capture, and that is in the record at, sorry, I actually don't have it right in front of me. It's in the record, and I can point the court to it in a moment. Third, that the officers were engaged in the lawful performance of their duties. Under California law, he could not have been convicted of assault on a peace officer with a semi-automatic firearm unless those officers were engaged in the lawful performance of their duties. And was that jury instruction given? Actually, Your Honor, I'm sorry, I don't know the answer to that question. Isn't that in the excerpts? I don't believe it is. Wouldn't that be something you'd want to put in the excerpts? Probably would have been a good idea. Okay. So we really don't know because we don't have it in the excerpts exactly what the jury found. We actually don't need to, Your Honor, and the reason for that is that the jury was permitted under California law to consider the course of the events as a continuous course of conduct. So with respect to the issue of whether or not the officers were engaged in the lawful performance of their duties, it is firmly established that had they used excessive force in effecting his arrest, he could never have been convicted. So to a certain extent, we don't necessarily need to know whether the issue was, it's important to consider that his conviction in this case was affirmed by the California court. I don't understand that last point. Okay. So let's say if the facts were at some point he was down and no longer a threat to the police and then they keep shooting him like a Rodney King situation. Sure. That would be excessive force. The critical point is whether or not they were acting lawfully. Yes, correct. Okay, so what we need to find is did the jury necessarily find that they were acting lawfully? But that's not the only element of the claim that he would have to negate in order to prevail in this action. He would have to negate several elements of the claim in order to prevail, and it's important to consider that under Heck, it's not necessarily whether or not the civil action will demonstrate the invalidity of his conviction. It's whether or not it will imply the invalidity of the conviction. Here, given that we have, even if you remove the application of the lawful performance of their duties, he would still need to negate that he didn't have a firearm and he never pointed it at the involved deputies all along in the civil action. It wouldn't be all over on that. If they had, if he had pointed it and shot it at the police and they had shot him and after they fired three or four shots, he was disabled, down, and no longer a threat to them, they couldn't keep shooting him. I would agree, Your Honor, but that's not the facts we have in the record. The record establishes that the officers, the involved deputies, actually had no physical contact with him following the last shot and following him when he was shot. Show me where to look in the excerpts that establishes from the criminal case or whatever record we're allowed to consider that he remained a deadly threat to the officers through the long period of shooting at him. The court of appeals decision is in the record at 194, and the, and I believe it's on the second page of the decision. The court sets out the facts in that, basically the shooting incident, and this was, the incident itself was an ongoing essentially gun battle wherein plaintiff was attempting to evade capture and repeatedly assaulting the officers during the course of that effort to evade capture. The only time he relented was after the last shot was fired, and the involved deputies heard him saying, I've been shot. They had no contact with him after that point in time. Shields were brought in by responding supervising sergeants, and the suspect was approached at that time. But the involved individuals, the defendants in this case, had no contact with him. They didn't put him into custody. If I look at page 194, I'll find that when he quit shooting at the police, they quit shooting at him. Correct. That's on the right. It's in the court of appeals decision. It may be on the second page. I can find you the exact citation. Yeah. I have the court of appeals decision, but it's not numbered in the way you suggest. I couldn't find it because of the number. Yeah. I can find it for you if you'd like. But do you have the page number of the actual decision? You must have it in front of you. I'm sorry. I didn't get the question. The page of the court of appeals decision to which you're referring to. I believe it's page 3, Your Honor. 3? 3. Correct. The court sets out the facts of the incident. And it established, and it was found beyond a reasonable doubt by the jury, that following the last shot that was fired, these individuals, the defendants in this case, had no contact with him. And just briefly, I want to address a couple of the other issues. Even if we assume, even if we ignore the heck issue, the court still could have granted summary judgment to defendants in this case because even if we assume the facts that Plaintiff was testifying to all along, that I didn't have a gun, I never pointed at the individuals, Plaintiff testified during his deposition that he did have a black cell phone in his hand, and this entire incident took place at night. In that circumstance, the force that the officers used in shooting at him was reasonable as a matter of law. Officers are permitted, if they believe that an individual poses a significant threat to their safety, to respond with deadly force. And where is that, the deposition? The deposition testimony is at the record at 105. It's basically Plaintiff testified he didn't have a gun, but he acknowledges that even if we assume it to be true, that he had a black cell phone in his hand. A what? A black belt? What? A black cell phone. You can't shoot at somebody for having a cell phone. Well, in certain circumstances, you can, Your Honor, and that's if the officers actually reasonably believe it's a gun. That's correct. Correct. I mean, we're talking about an incident that occurred at 10 o'clock at night in not the nicest neighborhood in south Los Angeles, and even if the officers perceived it to be a weapon, they would have been justified as a matter of law in using force. With respect to the Minnell issue, it wasn't briefed on appeal, but even if it was. Well, did the police officer testify to, here Mr. Curry says in response to what color is the cell phone that you were talking about? Answer, black. Could it look like a gun if you were waving it around? Answer, no, I don't think so. So what was the contrary testimony on that? The contrary testimony? Did the police officer testify that he reasonably, that he believed, objectively reasonably believed it was a gun? The officer's main. Or did he say he saw him with a gun? The officer's maintained all along that it was a gun, and a gun was found in the vicinity of the plaintiff when he was finally taken into custody. How many guns were found? Two, Your Honor. Two, one near the plaintiff and another nearby. Unless the court has any further questions, thank you very much. Thank you. As was the cell phone. A cell phone was found right near his body. But that's not really the issue because we can't challenge the fact that the criminal court jury found that he was convicted of assault with a deadly weapon. We can't challenge that. The issue is whether or not after he pointed the gun at the two police officers, whether or not after that excessive force was used. The fact that he had a cell phone and it was his cell phone unfortunately doesn't come into play when you have a heck bar. But nonetheless, heck goes, stands for the proposition that it would not necessarily imply the invalidity of his conviction. And whether the officers in this case used excessive force after the fact of the predicate acts for his conviction, there was excessive force, that should not under heck bar this Section 1983 action. How do we know what the time cutoff is for the heck bar? I think the implication of your argument is that sometime between police shot one and police shot 22, the heck bar quit running. Not really, Your Honor. No, my, my, my, I think that everything that happens after he points the gun at the officers has to be judged based on the facts of this case. But you have to draw a line. I mean, that's what the, if you're going to defeat the heck bar, you have to draw a line where, you know, where do you draw the line? I'm drawing the heck line at the point that he's committed the predicate acts for his conviction. The felon. But he's convicted of more than one 245, right? Two 245D2s, one against Brancato and the other one against the other officer. So he had two convictions. But doesn't the record say that they, I mean, they don't, they happen at different, you know, they don't happen at exactly the same time, right? Don't they claim more than one pointy gun? There is no real, no record of the criminal court trial transcript was introduced. It could have been by the defense, but it wasn't. They're relying on a summary of facts taken by the court of appeals from presumably the, whoever wrote the appeals cited the various parts of the transcript. So that's not, doesn't tell you what happened in the trial, the criminal trial. You have nothing to go by there. So I have to draw the line somewhere for you to prevail. So where do we draw the line? I draw the line at, this is a heck bar. It's not anything else. It's just, it's at the point, it's at the point that the plaintiff pointed the weapon at each of the two defendants. That's when the heck bar starts. When does the heck bar end? The heck, well, I wouldn't look at it like that. First of all, I would like to say he did not fire shots. There's no evidence of that. It ends at the point, they start to use excessive force on him at the point that he points the weapons at them. The question is, was it, they used force on him. The question is, and that's a fact question, was the force that they used excessive? And I think that's a question of fact. Well, if a man is pointing a gun at you with an evident intent to kill you, it's hard to imagine what force would be excessive. The policeman has a perfect right to kill him at that point because the man is threatening to kill the policeman. So at some point you have to say the heck bar ended and the police kept shooting. I don't think it quite works like that. I think that the way that it works is, were they in the legal performance of their duties up to the time that he pointed a weapon at them? And the answer to that is, yes, they were. The question after that, so, therefore, his conviction would stand because he, he, his conviction is, comes after, after. Maybe we can't stop it at a moment in time when the defendant has a gun pointed at the police officer. The police officer is entitled to do something in response. Well, that's a factual question as to whether or not it's excessive force. I think I just understood what your argument is. You're saying technically his crime was complete when he pointed the gun at the policeman. And since his crime was complete then, the heck bar only bars conduct of the police in response or at that instant. And it goes no further. For anything more, you would need some fact findings. Is that your argument? That's basically my argument.  Now I get it. Thanks. Thank you, Your Honor. Thank you. Thank you. The case is submitted. Porch v. Master Foods is submitted. Curry v. Baca is submitted. Estrajoco v. Holder has been dismissed. Moyni v. Holder is submitted. And we'll hear J.R. v. City of San Bernardino.
judges: Kleinfeld, Wardlaw, Callahan